## RUSIN v STATE OF FLORIDA
## Case No. 90-25AC (Lower Court Case No. 89-2137MM10A)
Seventeenth Judicial Circuit, Broward County

July 10, 1991

### APPEARANCES OF COUNSEL

**Nancy C. Wear, Esquire,** for appellant.

**Lewis Michael,** Assistant State Attorney, for appellee.

### OPINION OF THE COURT

Before FOGAN, J., Circuit Judge.

THIS CAUSE comes before the Court upon the appeal of a judgment entered against the Appellant, Thomas D. Rusin, after a nolo contendere plea was interposed, expressly reserving for review, the denial of Appellant's motion to dismiss for lack of jurisdiction.

On January 20, 1989, Appellant was stopped on the Seminole Reservation and cited by the Seminole Police for failure to observe a

single lane and failure to drive with headlights, pursuant to F.S. 316.089(1) and 316.217, respectively. Upon stopping Appellant's vehicle, the Seminole Police administered roadside tests, and subsequently arrested Appellant for DUI, pursuant to F.S. 316.193.

On December 20, 1989, the lower court denied Appellant's motion to dismiss for lack of jurisdiction on the grounds that the State of Florida assumed jurisdiction pursuant to F.S. 285.16.[1] The Appellant then entered into a nolo contendere plea expressly reserving the right to appeal the question of jurisdiction.

Appellant presently appeals to this Court to find that it was error to deny the motion to dismiss where the Seminole Police Department lacked statutory authority to enforce criminal and non-criminal traffic offenses until months after the Appellant's arrest.

Generally, state laws do not apply to tribal Indians on Indian reservations except when expressly provided for by Congress. *McClanahan v State Tax Commission of Arizona*, 411 U.S. 164 (1972). Congress has provided the states with the right to exercise limited civil and criminal jurisdiction over offenses committed or causes of action arising within the Indian reservations, as specified in 18 U.S.C. section 1162 and 28 U.S.C. section 1360, respectively. This Congressional enactment provided a way to deal with the problem of lawlessness on certain Indian reservations, the absence of adequate tribal institutions for law enforcement, and forums for resolving private legal disputes. *Washington v Confederated Bands and Tribes of the Yakima Indian Nation*, 439 U.S. 463 (1979); *Bryan v Itasca County, Minnesota*, 426 U.S. 2102 (1976). In 1961, the State of Florida, through legislative enactment, codified this authority through the imposition of F.S. 285.16.

F.S. 285.16 requires the civil and criminal laws of Florida to be enforced on Indian Reservations, "as elsewhere through the state". This is limited to those laws which have statewide application. *Op. Att'y Gen.* 077-29 (March 23, 1977).

Appellant was first stopped by the Seminole Indian Police and cited for failure to observe a single lane and failure to drive with headlights. Originally, when F.S. 285.16 was first promulgated, these traffic infrac-

---

[1] F.S. 285.16 provides for civil and criminal jurisdiction on an Indian Reservation. The statute states that: (1) the state of Florida hereby assumes jurisdiction over criminal offenses committed by or against Indians or other persons within Indian reservations and over civil causes of action between Indians or other persons or to which Indians or other persons are parties rising within Indian reservations. (2) The civil and criminal laws of Florida shall obtain on all Indian reservations in this state and shall be enforced in the same manner as elsewhere throughout the state.

tions were considered to be criminal in nature and were thus within the ambit of jurisdiction by the State over Indian reservations.

However, in 1974, the Legislature sought to decriminalize specific traffic violations, including violations of Chapter 316, The Florida Uniform Traffic Control Law. F.S. 318.12; F.S. 318.14. The intent of the Legislature in decriminalizing traffic violations was to allow an offender to pay a specified penalty or complete a driver's improvement course rather than to treat the offenses as a traditional criminal matter. *Nettleton v Doughtie,* 373 So.2d 667, 668 (Fla. 1979). These noncriminal traffic violations are neither punishable by incarceration nor do they carry the rights to trial by jury or to court-appointed counsel. F.S. 318.13(3). As such, within the limited meaning of the statute, these infractions are considered to be civil actions at law. *Nettleton, supra.* However, in changing the penalty from a criminal fine or imprisonment to a civil fine, the Legislature did not intend to change the jurisdiction of the county court to hear these violations. *Id.*

Generally, the State of Florida has jurisdiction to hear these matters. However, the State lacks the requisite authority to hear non-criminal traffic infractions as they apply to Indian reservations due to the limited nature of F.S. 285.16.

At first blush, F.S. 285.16 seems to encompass the entire realm of civil and criminal legislation. This is particularly so because prior to the 1974 decriminalization of traffic violations, the statute did encompass the entire realm of legislation. The authority to enforce traffic violations prior to the 1974 change is further evidenced by F.S. 285.18(c) which gave the Tribal Council of the Seminole Tribe the authority to employ law enforcement personnel to investigate any violations of the criminal laws of Florida occurring on Reservations over which the State has assumed jurisdiction.

At the date Appellant was stopped by the Seminole Police, the violations for which he was charged were no longer criminal in nature, but were "non-criminal" traffic infractions carrying "civil" penalties. Unfortunately for the law enforcement officers and fortuitously for the Appellant, the jurisdictional scope of F.S. 285.16 had not been amended to include traffic violations.

Appellee argues that traffic infractions are civil in nature and as such fall under the specific language of the statute which grants jurisdiction over civil matters. F.S. 285.16 provides in pertinent part that: "The State of Florida . . . assumes jurisdiction . . . *over civil causes of actions between Indians or other persons or to which Indians or other persons are parties rising within Indian reservations."* Clearly, this portion of

the statute was meant to offer the State courts as a forum to resolve private legal disputes. In *Bryan v Itasca County*, 426 U.S. 373 (1976), the U.S. Supreme Court in construing a similar state statute held that the extending of civil jurisdiction to Indian reservations was intended to primarily redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians and between Indians and other private citizens.

> [T]he consistent and exclusive use of the terms "civil causes of action," "aris[ing] on," "civil laws . . . of general applications to private persons or private property," and "adjudicat[ion]," in both the Act and its legislative history virtually compels our conclusion that the primary intent of § 4 [Pub. L. 280] was to grant jurisdiction over private civil litigation involving reservation Indians in state court.

In the case *sub judice,* the traffic infractions committed by the Appellant do not come under the realm of private litigation. Traffic infractions constitute a violation of State law and the State's subsequent enforcement of its laws makes it a party to the action. By virtue of the State of Florida's involvement, the regulations of the acts committed by the Appellant cannot constitute a private civil cause of action. As such, the State of Florida lacks subject matter jurisdiction over non-criminal traffic violations occurring on Indian Reservations.

Additionally, on the date of the incident, the Seminole Police Department lacked the requisite authority to enforce non-criminal traffic infractions committed on Indian reservations. Until, June, 1989, F.S. 285.18(c)(1) stated: "All law enforcement personnel employed shall be considered peace officers for all purposes and shall have the authority to bear arms, make arrests, and apply for, serve, and execute search warrants, arrest warrants, capias, and other process of the court, within their respective special improvement districts." During the time that traffic infractions were considered criminal in nature, the Seminole police had clear authority to enforce such criminal traffic violations. Effective June 16, 1989, approximately five months after the Appellant's arrest, F.S. 285.18(c)(1) was amended to allow the police, *"to enforce criminal and noncriminal traffic offenses". Laws of Florida, Chapter 89-58.*

This deliberate extension of police jurisdiction over non-criminal traffic offenses clearly evidences the legislature's realization that the statute in its original form did not confer authority over traffic matters after they had been decriminalized. Although the legislature may never have intended to remove traffic infractions from the scope of F.S.

285.16 and 285.18, their decriminalization of traffic violations effectively divested the courts and the police of that very authority. Courts must presume that statutes are passed with knowledge of prior existing statutes. *Woodgate Development Corp. v Hamilton Investment Trust,* 351 So.2d 14 (Fla. 1977).

Thus, the fact that the legislature subsequently amended the police's jurisdiction to include traffic infractions, can only serve to support the conclusions that the statute in effect at the time of the incident did not provide the law enforcement personnel with the specific authority to assume jurisdiction. To interpret the statute otherwise would render the subsequent amendment a nullity.

As such, the Seminole Police Department did not have subject matter jurisdiction to effect the stop and subsequent arrest of the Appellant in the case at bar.

For the reasons stated above, the trial court's Order denying Appellant's Motion to Dismiss for Lack of Jurisdiction is hereby REVERSED.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this 10th day of July, 1991.